Attachment H 1

(J3C) Judgment And Commitment

06-20758-cr-CMA

# United States District Court

## Southern District of Florida

MIAMI DIVISION

UNITED STATES OF AMERICA

v.

ROY M. BELFAST, JR.,
A/K/A "CHUCKIE TAYLOR,"
A/K/A "CHARLES TAYLOR, JR.,"
A/K/A "CHARLES TAYLOR II,"
A/K/A "CHARLES MCARTHER EMMANUEL"

JUDGMENT IN A CRIMINAL CASE

Case Number: 06-20758-CR-ALTONAGA(s)(s)

USM Number: 76556-004

Counsel For Defendant: Miguel Caridad, Esq., John Wylie, Esq.
Counsel For The United States: Karen Rochlin, Esq.,
                                              Caroline Miller, Esq.
Court Reporter: Barbara Medina

The defendant was found guilty on Counts 1, 2, 3, 4, 5, 6, 7, and 8 of the Second Superseding Indictment.
The defendant is adjudicated guilty of the following offenses:

| TITLE/SECTION NUMBER | NATURE OF OFFENSE | OFFENSE ENDED | COUNT |
|---|---|---|---|
| 18 U.S.C. § 2340A(c) | Conspiracy to commit torture | July 18, 2003 | 1 |
| 18 U.S.C. § 924(o) | Conspiracy to use, carry, and possess firearms during and in relation to a crime of violence | July 18, 2003 | 2 |
| 18 U.S.C. § 2340A | Torture | April, 1999 | 3 |
| 18 U.S.C. § 2340A | Torture | April, 1999 | 4 |
| 18 U.S.C. § 2340A | Torture | August, 1999 | 5 |
| 18 U.S.C. § 2340A | Torture | July 24, 2002 | 6 |
| 18 U.S.C. §2340A | Torture | September, 2002 | 7 |
| 18 U.S.C. § 924(c) | Using, carrying and possessing a firearm during and in relation to a crime of violence | July 24, 2002 | 8 |

The defendant is sentenced as provided in the following pages of this judgment.

USDC FLSD 245B (Rev. 12/03) - Judgment in a Criminal Case

DEFENDANT: ROY M. BELFAST, JR., A/K/A "CHUCKIE TAYLOR" A/K/A "CHARLES TAYLOR, JR.," A/K/A
CHARLES TAYLOR II," A/K/A "CHARLES MCARTHER EMMANUEL"
CASE NUMBER: 06-20758-CR-ALTONAGA

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of
name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment
are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of any
material changes in economic circumstances.

Date of Imposition of Sentence:
January 9, 2009

*Cecilia M. Altonaga*

CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE

January 9, 2009

Case 1:06-cr-20758-CMA   Document 618   Entered on FLSD Docket 01/09/2009   Page 3 of 7
USDC FLSD 245B (Rev. 12/03) - Judgment in a Criminal Case
Page 3 of 7

DEFENDANT: ROY M. BELFAST, JR., A/K/A "CHUCKIE TAYLOR" A/K/A "CHARLES TAYLOR, JR.," A/K/A
CHARLES TAYLOR II," A/K/A "CHARLES MCARTHER EMMANUEL"
CASE NUMBER: 06-20758-CR-ALTONAGA

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 1164 months. The term consists of 240 months as to Count One, 240 months as to Count Two, 120 months as to each of Counts Three, Four, Five, Six and Seven, and 84 months as to Count Eight, with all such terms to run consecutively to each other.

The Court makes the following recommendations to the Bureau of Prisons:

The Court recommends the defendant be placed in the facility located at Coleman, Florida.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By: _____
Deputy U.S. Marshal

DEFENDANT: ROY M. BELFAST, JR., A/K/A "CHUCKIE TAYLOR" A/K/A "CHARLES TAYLOR, JR.," A/K/A
CHARLES TAYLOR II," A/K/A "CHARLES MCARTHER EMMANUEL"
CASE NUMBER: 06-20758-CR-ALTONAGA

## SUPERVISED RELEASE

     Upon release from imprisonment, the defendant shall be on supervised release for a term of 5 years. The term
consists of five years as to Count Eight, and three years as to each of Counts One, Two, Three, Four, Five, Six and Seven,
with all such terms to run concurrently.

     The defendant shall report to the probation office in the district to which the defendant is released within 72
hours of release from custody of the Bureau of Prisons.

     The defendant shall not commit another federal, state or local crime.

     The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any
unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from
imprisonment and at least two periodic drug tests thereafter, as determined by the court.

     **The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.**

     If this judgment imposes a fine or a restitution obligation, it is a condition of supervised release that the
defendant pay in accordance with the Schedule of Payments sheet of this judgment.

     The defendant must comply with the standard conditions that have been adopted by this court as well as any
additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1.   the defendant shall not leave the judicial district without the permission of the court or probation officer;
2.   the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful
and complete written report within the first five days of each month;
3.   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation
officer;
4.   the defendant shall support his or her dependents and meet other family responsibilities;
5.   the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training,
or other acceptable reasons;
6.   the defendant shall notify the probation officer at least ten (10) days prior to any change in residence or employment;
7.   the defendant shall refrain from the excessive use of alcohol and shall not purchase, possess, use, distribute, or administer
any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8.   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9.   the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person
convicted of a felony unless granted permission to do so by the probation officer;
10.   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit
confiscation of any contraband observed in plain view by the probation officer;
11.   the defendant shall notify the probation officer within seventy-two (72) hours of being arrested or questioned by a law
enforcement officer;
12.   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency
without the permission of the court;
13.   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the
defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such
notifications and to confirm the defendant's compliance with such notification requirement.

USDC FLSD 245B (Rev. 12/03) - Judgment in a Criminal Case                                    Page 5 of 7

DEFENDANT: ROY M. BELFAST, JR., A/K/A "CHUCKIE TAYLOR" A/K/A "CHARLES TAYLOR, JR.," A/K/A
CHARLES TAYLOR II," A/K/A "CHARLES MCARTHER EMMANUEL"
CASE NUMBER: 06-20758-CR-ALTONAGA

# SPECIAL CONDITIONS OF SUPERVISION

The defendant shall also comply with the following additional conditions of supervised release:

**Mental Health Treatment** - The defendant shall participate in an approved inpatient/outpatient mental health treatment program. The defendant will contribute to the costs of services rendered (co-payment) based on ability to pay or availability of third party payment.

**Financial Disclosure Requirement** - The defendant shall provide complete access to financial information, including disclosure of all business and personal finances, to the U.S. Probation Officer.

**Employment Requirement** - The defendant shall maintain full-time, legitimate employment and not be unemployed for a term of more than 30 days unless excused for schooling, training or other acceptable reasons. Further, the defendant shall provide documentation including, but not limited to pay stubs, contractual agreements, W-2 Wage and Earnings Statements, and other documentation requested by the U.S. Probation Officer.

**Permissible Search** - The defendant shall submit to a search of his person of property conducted in a reasonable manner and at a reasonable time by the U.S. Probation Officer.

DEFENDANT: ROY M. BELFAST, JR., A/K/A "CHUCKIE TAYLOR" A/K/A "CHARLES TAYLOR, JR.," A/K/A
CHARLES TAYLOR II," A/K/A "CHARLES MCARTHER EMMANUEL"
CASE NUMBER: 06-20758-CR-ALTONAGA

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the Schedule of Payments.

| Total Assessment | Total Fine | Total Restitution |
|---|---|---|
| $800.00 | 0 | $7,500.00 |

It is further ordered that the defendant shall pay restitution in the amount of $7,500.00. During the period of incarceration, payment shall be made as follows: (1) if the defendant earns wages in a Federal Prison Industries (UNICOR) job, then the defendant must pay 50% of wages earned toward the financial obligations imposed by this Judgment in a Criminal Case; (2) if the defendant does not work in a UNICOR job, then the defendant must pay $25.00 per quarter toward the financial obligations imposed in this order.

Upon release of incarceration, the defendant shall pay restitution at the rate of 10% of monthly gross earnings, until such time as the court may alter that payment schedule in the interests of justice. The U.S. Bureau of Prisons, U.S. Probation Office and U.S. Attorney's Office shall monitor the payment of restitution and report to the court any material change in the defendant's ability to pay. These payments do not preclude the government from using other assets or income of the defendant to satisfy the restitution obligations.

The defendant shall make restitution (including community restitution) to the following payee(s) in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| To be provided by the U.S. Probation Office | | $7,500.00 | |

*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code, for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: ROY M. BELFAST, JR., A/K/A "CHUCKIE TAYLOR" A/K/A "CHARLES TAYLOR, JR.," A/K/A CHARLES TAYLOR II," A/K/A "CHARLES MCARTHER EMMANUEL"
CASE NUMBER: 06-20758-CR-ALTONAGA

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

    A.  Lump sum payment of $800.00 due immediately.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

The assessment/fine/restitution is payable to the CLERK, UNITED STATES COURTS and is to be addressed to:

    U.S. CLERK'S OFFICE
    ATTN: FINANCIAL SECTION
    400 NORTH MIAMI AVENUE, ROOM 8N09
    MIAMI, FLORIDA 33128-7716

The assessment/fine/restitution is payable immediately. The U.S. Bureau of Prisons, U.S. Probation Office and the U.S. Attorney's Office are responsible for the enforcement of this order.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest (7) penalties, and (8) costs, including cost of prosecution and court costs.



Exhibit " 1 "

Intial     28 U.S.C. § 2255    Civil Case # 12-20754-CIV-ALT

> ROY M. <u>BELFAST</u>, JR., Movant, vs. UNITED STATES OF AMERICA, Respondent.
> UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
> 2013 U.S. Dist. LEXIS 20029
> CASE NO. 12-20754-CIV-ALTONAGA/White
> February 14, 2013, Decided
> February 14, 2013, Filed

**Editorial Information: Prior History**

<u>Belfast</u> v. United States, 2012 U.S. Dist. LEXIS 186057 (S.D. Fla., Oct. 17, 2012)

**Counsel**   Roy M. <u>Belfast</u>, Jr., Prisoner ID: 76556-004, Plaintiff, Pro se, Inez, KY.
For United States of America, Defendant: Noticing 2255 US Attorney, LEAD ATTORNEY; Anne Ruth Schultz, LEAD ATTORNEY, Karen Rochlin, United States Attorney's Office, Miami, FL.

**Judges:** CECILIA M. ALTONAGA, UNITED STATES DISTRICT JUDGE.

Opinion

**Opinion by:**   CECILIA M. ALTONAGA

Opinion

## ORDER

**THIS CAUSE** comes before the Court on Magistrate Judge Patrick A. White's ("Judge White['s]") Report of Magistrate Judge ("Report") [ECF No. 13],1 entered on October 17, 2012. On February 23, 2012, Movant, Roy M. <u>Belfast</u> ("<u>Belfast</u>") filed a *pro se* Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside and Correct Sentence ("Motion") [ECF No. 1]. The Clerk referred the case to Magistrate Judge White under Administrative Order 2003-19 for a report and recommendation on any dispositive matters. (*See* [ECF No. 3]). On April 13, 2013 - approximately two months after filing his motion - <u>Belfast</u> sought leave to file a supplement to the Motion ("Supplement") (*see* [ECF No. 6]), which the Magistrate Judge granted, subject to all applicable procedural bars, and required the Respondent to respond to both the Motion and the Supplement (*see* [ECF No. 7]). Respondent, the United States of America ("Government"), then filed its Response in Opposition . . . [ECF No. 10], on April 27, 2012, to which <u>Belfast</u> replied ("Reply") [ECF No. 12], on May 25, 2012.

In his Report, Judge White recommends the Motion be denied, and a certificate of appealability should not issue. (*See* Report 40). <u>Belfast</u> filed his Reply to the Magistrate Judge's Report and Recommendation ("Objections") [ECF No. 14], on November 5, 2012. The Government filed a Response in Opposition to Movant/Petitioner's "Reply" . . . ("Response") [ECF No. 19], on December 21, 2012. The Court has carefully reviewed the parties' filings, pertinent portions of the criminal file, and applicable law.

## I. BACKGROUND

By way of background, the Motion arises out of an eight-count Second Superseding Indictment ("Indictment") [Cr. ECF No. 257] returned by a grand jury, charging <u>Belfast</u> with conspiracy to

1ykcases                                   1

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

commit torture in Liberia against seven unnamed victims, in violation of 18 U.S.C. section 2340A(c) (Count I); conspiracy to use and carry a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. section 924(o) (Count II); committing substantive crimes of torture against five named victims, in violation of 18 U.S.C. section 2340A(a) (Counts III-VII); and using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. section 924(c)(1)(A) (Count VIII). (*See* Report 6-7; *see also* Indictment). **Belfast** entered "not guilty" pleas to the crimes charged and the case proceeded to trial before a jury. (*See* Report 7; *see also* Arraignment Information Sheet [Cr. ECF No. 260]).

Before trial, **Belfast** - while represented by counsel - filed a Motion to Dismiss the Indictment ("Motion to Dismiss") [Cr. ECF No. 38]. **Belfast** argued, *inter alia*, 18 U.S.C. section 23402 ("Section 2340") was unconstitutionally vague for failing to define various terms, including the element of action under color of law. (*See* Mot. to Dismiss 17). **Belfast** further contended the statute was unconstitutional in that its definition of torture was materially different and much broader than the definition set forth in the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85 ("Treaty"). (*See* Mot. to Dismiss Reply 4-5 [Cr. ECF No. 83]). Specifically, **Belfast** asserted Section 2340's requirement of action under "color of law" was improper, as the Treaty referred to a "public official" or someone "acting in an official capacity." (*Id.* 4).

The Court denied Belfast's Motion to Dismiss, holding it was unnecessary for the relevant statute to track the language of the Treaty verbatim. (*See* Order dated July 5, 2007 ("July 5 Order"), at 13 [Cr. ECF No. 148]). The Court further found the statute did parallel the definition found in the Treaty. (*See id.* 13). While rejecting a separate argument, the Court observed that **Belfast** was specifically charged with action taken under color of law and not action taken in an official capacity. (*See id.*). The Court concluded "even non-government[al] employees" could be charged with acting under color of law. (*Id.* 23).

At trial, the Government called witnesses to testify regarding Belfast's activities in Liberia. *See United States v.* **Belfast**, 611 F.3d 783, 793-99 (11th Cir. 2010) (detailing the facts established at trial). After a one-month trial, the jury convicted **Belfast** of all crimes charged in the Indictment. (*See id.* at 800). The Court adjudicated **Belfast** guilty of all the crimes, and sentenced him to a total term of imprisonment of ninety-seven years. (*See id.* at 801).

Through counsel, **Belfast** filed a direct appeal from his convictions and sentence, arguing: (1) Sections 2340 and 2340A (collectively, the "Torture Act") were unconstitutional in that they impermissibly exceeded the bounds of the Treaty both in the definition of torture and the proscription against conspiracies to commit torture; (2) the convictions under 18 U.S.C. section 924(c) were unlawful because that provision could not apply extraterritorially to actions in Liberia; (3) an accumulation of procedural errors rendered the trial fundamentally unfair; and (4) the sentence imposed was unlawful for several reasons. *See* **Belfast**, 611 F.3d at 793. On July 15, 2010, the Eleventh Circuit affirmed the convictions and sentence, rejecting all of Belfast's arguments. *Id.* at 828. The United States Supreme Court denied Belfast's petition for writ of certiorari on February 22, 2011. *See* **Belfast** *v. United States*, 131 S. Ct. 1511, 179 L. Ed. 2d 334 (2011).

On February 16, 2012, almost a year after his petition for writ of certiorari was denied, **Belfast** filed the instant Motion seeking relief under 28 U.S.C. section 2255 ("Section 2255"). **Belfast** asserts the following three claims for relief in his Motion:

(1) appellate counsel improperly failed to raise as an issue on direct appeal that this Court's jury instruction, defining "color of law," resulted in an unlawful variance of the superseding Indictment;

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(2) appellate counsel improperly failed to raise as an issue on direct appeal that this Court's jury instructions created a variance from, or constructive amendment to, the allegations of Count 1 of the superseding [I]ndictment, charging a conspiracy to torture; and

(3) trial counsel improperly failed to object when Wesley Sieh's hearsay testimony was admitted pursuant to Federal Rules of Evidence 801(d)(2)(C) and (D).(Report 2). **Belfast** asserts the following additional claims in his Supplement, as described in the Report:

(1) appellate counsel failed to properly challenge on direct appeal the admission of certain hearsay testimony set forth as a list of bullet points;

(2) appellate counsel failed to challenge on direct appeal his [s]ection 924(c) conviction in that the offense required proof of the firearm's nexus to interstate or foreign commerce;

(3) trial counsel failed to properly object to the admission of Wesley Sieh's testimony; and

(4) trial counsel failed to object to the "color of law" portion of the jury instruction and appellate counsel failed to raise the issue on direct appeal.(*Id.*). The Court agrees with the Report's characterization of the claims asserted in the Motion and Supplement.

## II. ANALYSIS

The Court addresses the Report's analysis of each argument under a *de novo* standard of review. *See* Fed. R. Civ. P. 72(b)(3) (When a magistrate judge's "disposition" has properly been objected to, district courts must review the disposition *de novo*). Because all of Belfast's claims allege ineffective assistance of counsel (both trial and appellate), the claims must be reviewed pursuant to the test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The test provides:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.*Id.* at 687. Belfast's claims must be reviewed to determine if trial or appellate counsel was deficient; and if a deficiency exists, then the Court must determine whether it prejudiced **Belfast**.

As an initial matter, however, the Court must ascertain whether the ineffective assistance of counsel claims asserted in the Supplement were timely filed. Generally, "[a] 1-year period of limitation shall apply to a motion under" Section 2255. 28 U.S.C. § 2255(f). The one-year limitation period begins when "the judgment of conviction becomes final." *Id.* § 2255(f)(1). Belfast's convictions and sentence became final on February 22, 2011, the date the Supreme Court denied Belfast's petition for a writ of certiorari. *See Clay v. United States,* 537 U.S. 522, 527, 123 S. Ct. 1072, 155 L. Ed. 2d 88 (2003) (citations omitted) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). **Belfast** timely filed his Motion, but his Supplement was filed after the one-year deadline.

**Belfast** may amend or supplement his Motion "as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. However, an amendment to a pleading only relates back to the date

1ykcases

3

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

of the original pleading in limited circumstances, including when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see also United States v. Gonzalez*, 592 F.3d 675, 679 (5th Cir. 2009) ("[The movant] first argues that his new claim is not time-barred because it relates back to his original § 2255 pleading under Federal Rule of Civil Procedure 15(c)(1). It is well settled that Rule 15 applies to federal habeas proceedings."). When determining whether to permit relation back, the Court must determine whether "the claims added by amendment arise from the same core facts as the timely filed claims." *Mayle v. Felix*, 545 U.S. 644, 657, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005). Amendments do not relate back "when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id.* (quoting *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999)).

Here, the first and second claims asserted in the Supplement are, generally speaking, ineffective assistance of counsel claims; however, neither arises from the same core facts as the timely-filed claims and each is supported by different facts than the original claims. Accordingly, the first and second additional ineffective assistance of counsel claims in the Supplement do not relate back to the original, timely-filed Motion and are time-barred. *See Gonzalez*, 592 F.3d at 680 (citation and internal quotation marks omitted) ("New claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision. Rather, we must look to whether [the defendant's] new claim asserts a 'new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'") (citation omitted).

The Court reaches a different result regarding claims three and four in the Supplement, as these claims are premised on the same "core facts" as those asserted in the Motion. *Mayle*, 545 U.S. at 657. Claim three - regarding the testimony of Wesley Sieh - challenges the same subject matter as the third claim in the Motion, and the two will be considered together. Additionally, claim four in the Supplement is an expansion of the first claim of the Motion concerning a disputed jury instruction. As such, these two related claims will also be considered jointly. Thus, claims three and four of the Supplement relate back to the original Motion.

The Court's *de novo* review of the permissible arguments made in the Motion and Supplement will preliminarily proceed with the disputed "color of law" jury instruction. Next, the Court will evaluate the arguments with respect to the conspiracy to torture jury instruction, and conclude with an analysis of the admission of Wesley Sieh's testimony.

## A. "Color of Law" Jury Instruction (Claim 1 of the Motion and Claim 4 of the Supplement)

**Belfast** contends trial counsel failed to object to the "color of law" portion of the jury instruction and appellate counsel failed to raise the issue on appeal. (*See, e.g.,* Mot. 7). **Belfast** maintains individuals who were not officials of the Liberian government cannot act under color of law. (*See, e.g., id.*). Judge White concludes the instruction was proper because a defendant need not be a government official to act under color of law, and the Indictment did not charge **Belfast** with action taken in an official capacity, but with action taken under color of law. (*See* Report 21-22). **Belfast** objects to this finding, arguing the Government was restricted to proving he acted as a government official and the Government failed to meet this burden. (*See* Objections 2-3).

The Court finds the Report properly confirms the rule that a defendant need not be a government official to act under color of law. *See United States v. Price*, 383 U.S. 787, 794, 86 S. Ct. 1152, 16 L. Ed. 2d 267 (1966) (footnote call number omitted) ("To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents."). Belfast's contention is premised on a misinterpretation of the holding in

1ykcases 4

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*United States v. Haimowitz*, 725 F.2d 1561 (11th Cir. 1984). While **Belfast** admits that there are at least two ways to prove a defendant acted under "color of law," he seizes on language in *Haimowitz* to argue "non-government employees may be considered to be acting under color of law [only] if at the direction of government agents." (Objections 2) (alteration added). **Belfast** continues, "[T]he [I]ndictment speaks specifically of the defendant ordering other's [sic] not vice versa." (*Id.*). However, the facts in *Haimowitz* presented a different question to the Eleventh Circuit than is presented here, namely: "whether [an individual] was acting at the direction of the government" when he engaged in certain activities on his own. *Haimowitz*, 725 F.2d at 1582. *Haimowitz* did not hold that the only way for a private individual to act under color of law is at the direction of a public official.

As previously mentioned, "[i]t is enough that [**Belfast**] is a willful participant in joint activity with the State or its agents." *Price*, 383 U.S. at 794. Put differently, **Belfast** could give and receive orders - so long as it was in conjunction with the Liberian government - and still qualify as acting under color of law. Thus, Belfast's objection incorrectly assumes a strained definition of "color of law" which is not supported by the relevant case law, and the jury was properly instructed on the color of law element of the torture charges.

Moreover, in its Order denying Belfast's earlier Motion to Dismiss, the Court recognized **Belfast** was charged with "acting under color of law" and not with acting in his official capacity. (July 5 Order 23). As such, the specific nature of the charges was revealed before trial and the jury instruction was in accordance with established law. Because no error was present, trial counsel was not ineffective for failing to object to the jury instruction and appellate counsel was not ineffective for declining to raise a meritless issue on appeal. *See Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009) (citation omitted) ("[T]his Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").

**Belfast** additionally argues the evidence at trial produced a variance3 from the Indictment, or the jury instructions constructively amended the Indictment. (*See, e.g.*, Mot. 7-8). Judge White concludes no variance occurred because the facts proved at trial did not differ so greatly from the charges that **Belfast** was unfairly surprised. (*See* Report 23). **Belfast** generally objects to this finding, restating his argument from his Motion. (*See* Objections 5).

As the Eleventh Circuit has stated:

The standard of review for whether there is a material variance between the allegations in the indictment and the facts established at trial is twofold: First, whether a material variance did occur, and, second, whether the defendant suffered substantial prejudice as a result. . . . A variance occurs when the evidence at trial establishes facts materially different from those alleged in the indictment. To find substantial prejudice, we have ordinarily considered whether the proof at trial differed so greatly from the charges that appellant was unfairly surprised and was unable to prepare an adequate defense.*United States v. Lander*, 668 F.3d 1289, 1295 (11th Cir. 2012) (internal quotation marks and citations omitted). Here, the Report correctly concludes there was no unfair surprise and hence no variance. The evidence was in accordance with the language of the Indictment, and the Court made clear that **Belfast** was not being charged in an official capacity. Indeed, the Court's July 5 Order plainly illuminated the charges as "misuse of power" because the "wrongdoer is *clothed* with authority of law." (July 5 Order 23) (emphasis added).

Judge White similarly finds no constructive amendment as the jury instructions tracked the language of the Indictment and the Court specifically advised **Belfast** before trial he had not been charged with acting as an official, but with acting under color of law. (*See* Report 23). **Belfast** generally objects to this finding, again restating his argument from his Motion. (*See* Objections 4).

1ykcases                                        5

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

"An indictment is constructively amended 'when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment.'" *United States v. Dortch*, 696 F.3d 1104, 1111-12 (11th Cir. 2012) (quoting *United States v. Keller*, 916 F.2d 628, 634 (11th Cir. 1990)). Here, the Indictment expressly described Belfast's purported actions "while acting under color of law," and offered no distinction between his status as an official or non-official government agent. (Indictment, at 13-16). The jury instructions defined "under color of law" and instructed that a conviction was permissible if **Belfast** "was a willful participant together with the governmental unit or its agent." (October 28, 2008 Trial Tr. 160:20-21 [Cr. ECF No. 636]). Because the Indictment contained no language limiting the charges to actions taken as a government official, the instructions permitting a conviction on alternative grounds did not constructively amend the Indictment by "broaden[ing] the possible bases for conviction." *Dortch*, 696 F.3d at 1111-12. As such, the ineffective assistance of counsel claim fails because Belfast's counsel was not required to pursue a frivolous argument at trial or on appeal. *See Knowles*, 556 U.S. at 123.

Finally, **Belfast** contends there was insufficient evidence to support the "color of law" element of the torture convictions because the Government did not establish that **Belfast** was a willful participant and acted in concert with various Liberian officials. (*See, e.g.*, Mot. 7). The Report determines there is no merit to this claim as the Government amply established that **Belfast** acted under color of law. (*See* Report 27-28).

The trial record is replete with evidence establishing **Belfast** acted under color of law as he was "a willful participant in joint activity with the State or its agents." *Price*, 383 U.S. at 794 (footnote call number omitted). The evidence indicates **Belfast** oversaw the creation of the "Anti-Terrorism Unit" as his self-proclaimed "pet project," wore the special uniform of that unit, commanded other state agents, was referred to as "Chief," and engaged in other indicia of acting in concert with the government. *See Belfast*, 611 F.3d at 793-99. Such evidence sufficiently supports the allegation that **Belfast** was a willful participant in joint activity with the State. Accordingly, Belfast's appellate counsel was not ineffective for foregoing a plainly meritless challenge to the sufficiency of the evidence.

Based on the foregoing, the Court agrees with Judge White's conclusion that Belfast's claims of ineffective assistance of counsel with respect to the "color of law" jury instruction are refuted by the record and have no merit.

## B. Conspiracy to Torture Jury Instruction (Claim 2 of the Motion)

Belfast's second claim in his Motion is that appellate counsel failed to challenge the Court's jury instruction on conspiracy to torture as creating a variance from, or amendment to, the allegations in the Indictment. (*See, e.g.*, Mot. 8-9). The Report gives multiple reasons precluding relief for **Belfast** on this claim. Specifically, the Report concludes: (1) the instructions did not result in a variance or amendment as they constituted a wholly sufficient and correct charge concerning torture as the true object of the conspiracy (*see* Report 30); (2) the jury's verdict definitively resolved the issue of whether **Belfast** committed the particular acts alleged as the object of the conspiracy in the Indictment (*see id.*); and (3) allegations in the Indictment "that are not necessary to establish a violation of a statute are surplusage and may be disregarded if the remaining allegations are sufficient to charge a crime" (*id.* 31). **Belfast** objects to these conclusions, arguing the jury instructions on the conspiracy charge impermissibly stated he could be found guilty if the object of his unlawful plan was to commit torture as charged. (*See* Objections 9-10). **Belfast** maintains the conspiracy instruction must have included language4 in the Indictment specifically depicting the object of the conspiracy. (*See id.*).

1ykcases                                      6

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

It is again difficult to discern whether **Belfast** argues the conspiracy to torture jury instructions constructively amended the Indictment, or the evidence offered at trial caused a variance from the Indictment. To be certain whether **Belfast** is entitled to relief, the Court evaluates his claims under both doctrines. As to the constructive amendment issue, Judge White properly concludes the trial court correctly denied Belfast's requested jury instructions because the extra allegations in the Indictment were not necessary to establish conspiracy to torture.

"An amendment occurs when the essential elements of the offense set forth in the indictment are altered, either actually or in effect, by the prosecutor or the court after the grand jury has passed upon them." *United States v. McIntosh,* 23 F.3d 1454, 1457 (8th Cir. 1994) (citations and internal quotations marks omitted). "A jury instruction that constructively amends an indictment is normally *per se* reversible error because such an amendment violates a defendant's Fifth Amendment right to be charged by a grand jury indictment." *United States v. Cabrera,* 284 F. App'x 674, 683 n.12 (11th Cir. 2008) (citation omitted). Nevertheless, "[a] court may ignore independent and unnecessary allegations in an indictment. Allegations in the indictment that are not necessary to establish a violation of a statute are surplusage and may be disregarded if the remaining allegations are sufficient to charge a crime." *McIntosh,* 23 F.3d at 1457; *see also United States v. Rosenthal,* 9 F.3d 1016, 1023 (2d Cir. 1993) ("While it is the Government's burden to prove the essential elements of a charged crime, allegations in an indictment that go beyond the essential elements which are required for conviction do not increase the Government's burden.").

In order to charge conspiracy to torture, the conspiracy offense only requires the underlying torture offense be the object of the conspiracy. *See* 18 U.S.C. § 2340A(c) ("Conspiracy.- A person who conspires to commit an offense under this section shall be subject to the same penalties . . . as the penalties prescribed for the offense, the commission of which was the object of the conspiracy."). Here, the jury instructions provided the evidence must prove beyond a reasonable doubt "that the defendant knowingly or voluntarily joined or participated in the conspiracy and . . . that *the object of the unlawful plan was to commit torture, as charged*." (October 28, 2008 Trial Tr. 156:23-25) (emphasis added). The instructions gave the jury the necessary elements to properly charge the crime, and permissibly declined to include the surplusage allegations contained in the Indictment.

The instructions did not constructively amend the Indictment because the essential elements of the offense were not altered to "broaden the possible bases for conviction beyond" what was contained in the Indictment. *United States v. Augustin,* 661 F.3d 1105, 1116 (11th Cir. 2011) (citations and internal quotations marks omitted) ("[C]ongress defines the elements of an offense, not the charging document. So, as long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime."). The jury instructions did not broaden the possible bases for conviction by accurately stating the fundamental elements of conspiracy to torture. As such, the Court did not constructively amend the Indictment, the instructions were proper, and counsel was not ineffective for failing to appeal a meritless claim.

Moreover, the evidence at trial did not constitute a variance from the Indictment. "[A] variance in the indictment occurs when the essential elements of the offense set forth in the indictment are left unaltered but the evidence offered at trial proves facts materially different from those alleged in the indictment." *McIntosh,* 23 F.3d at 1458 (alteration added) (citations and internal quotation marks omitted). A variance is not reversible error if "the indictment fully and fairly apprised [the defendant] of the charges, that is, if the variance is harmless." *Id.* (alteration added) (citations and internal quotation marks omitted). Here, no variance occurred as the Government produced evidence materially *similar* to the facts alleged in the Indictment. (*See* Report 30-31) (citing evidence to

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

support the allegations in the Indictment).

In addition, **Belfast** argues the Government failed to charge any additional individuals with the same conspiracy charge, leaving him in a "one man conspiracy, which is in conflict with law." (Objections 7). This argument was not raised in Belfast's Motion or Supplement and falls outside the one-year statute of limitations period for Section 2255 claims. *See* 28 U.S.C. § 2255(f). Notwithstanding this deficiency, Belfast's argument is plainly incorrect; the Government need not charge other conspirators so long as the allegations are sufficient. *See United States v. Vonstein*, 105 F.3d 667, [WL] at *1 (9th Cir. 1996) ("Although a charge of conspiracy necessarily must allege the involvement of more than one person . . . it is perfectly permissible to indict and try a single member of a properly alleged conspiracy.").

The Court therefore agrees with the Report's conclusion that Belfast's second claim fails to state grounds upon which Section 2255 relief can be granted.

## C. Admission of Wesley Sieh's Testimony (Claim 3 of the Motion and Claim 3 of the Supplement)

Belfast's third claim for relief asserts trial counsel improperly failed to object to the admission of Wesley Sieh's ("Sieh['s]") testimony as hearsay. (*See, e.g.,* Mot. 7-8). Sieh served as one of Belfast's military recruits and testified regarding statements made by his former National Patriotic Front of Liberia commander (the "Former Commander"), the Anti-Terrorism Unit ("ATU") base commander (the "Base Commander"), and **Belfast**. (*See generally* October 8, 2008 Trial Tr. 116-236 [Cr. ECF No. 591]; October 10, 2008 Trial Tr. 13-142 [Cr. ECF No. 592]). The Report finds the Court properly admitted these statements pursuant to Federal Rules of Evidence 801(d)(2)(C) and (D)5 and notes that the Eleventh Circuit has already rejected such arguments. (*See* Report 34-35 (citing *Belfast*, 611 F.3d at 820-21)). In his Objections, **Belfast** argues the Eleventh Circuit erred in its determination with respect to Sieh's testimony regarding the Former Commander. (*See* Objections 13).

As an initial observation, the Court notes trial counsel did object to several portions of Sieh's testimony on the basis of hearsay. (*See* October 8, 2008 Trial Tr. 157:8-14, 158:6-8, 159:11-12, 160:9-10, 165:1-4, 168:5-7, 181:20-21, 216:22, 217:14-18). Thus, Belfast's argument is simply untrue. Moreover, the Eleventh Circuit already ruled on a portion of the disputed testimony, finding Sieh's testimony - regarding statements made by the Former Commander - was properly admitted pursuant to Federal Rule of Evidence 801(d)(2)(C) as an admission by a party-opponent. As the Eleventh Circuit found:

> [**Belfast**]'s cursory argument that the district court improperly admitted the testimony of Wesley Sieh, an ATU soldier, is without merit. . . . It was not improper for the district court to admit Sieh's testimony about [the Former Commander's] statements regarding [**Belfast**]'s instructions on the formation of the ATU. Under Fed. R. Evid. 801(d)(2)(C), this testimony was an admission by a party-opponent; it was a "statement by a person authorized by the party to make a statement concerning the subject," and thus was admissible hearsay. In particular, [the Former Commander's] statements to Sieh were admissible because they concerned the same matter for which [**Belfast**] was employing [the Former Commander], namely, to recommend men for the ATU. Put differently, [**Belfast**] hired [the Former Commander] to find him soldiers to form the ATU. [The Former Commander] then, in the process of finding ATU recruits, asked Sieh, an experienced Liberian soldier in Taylor's army, to join the ATU on [**Belfast**]'s behalf. The district court did not abuse its discretion in admitting this evidence. *Belfast*, 611 F.3d at 820 (internal citation omitted).

The Court's ruling admitting this evidence has already been upheld on appeal. In a Section 2255

1ykcases                                                        8

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

motion, a defendant is not entitled to reargue issues that have been adversely decided against him on direct appeal. *See United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000) ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal. Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." (citation, alteration, and internal quotation marks omitted)).

**Belfast** similarly challenges Sieh's testimony regarding statements made by the Base Commander, arguing the admitted "statements" of the Base Commander are hearsay and fall outside the alleged dates of the conspiracy. (Objections 15). The Report finds sufficient evidence existed to establish the Base Commander's employment or agency under **Belfast**, and the statements were admissible in accordance with Federal Rule of Evidence 801(d)(2)(D). (*See* Report 35). In his Objections, **Belfast** *contends the Government failed to establish the existence of the employment relationship between* the Base Commander and **Belfast** *independent of the allegedly hearsay statements.* (*See* Objections 13). **Belfast** also argues some of the admitted statements fall outside the allege dates of the conspiracy. (*See* Objections 15).

Contrary to Belfast's arguments, the Government laid a proper foundation for the admission of the testimony pursuant to Rule 801(d)(2)(D). Sieh testified regarding his personal observations of the hierarchy at the base and the Base Commander's interactions as Belfast's subordinate. (*See* October 8, 2008 Trial Tr. 209:25-211:10). These personal observations are admissible as they are not statements and therefore not subject to the hearsay rules, *see* Fed. R. Evid. 801(c); and the observations sufficiently establish the Base Commander acted at Belfast's direction. Consequently, the Base Commander's statements are admissible as "within the scope" of his agency relationship with **Belfast** pursuant to Rule 801(d)(2)(D).

Furthermore, while some of the testimony predates the conspiracy, it served to explain how Sieh knew the declarant and was intrinsic evidence of the relationship between the two men. This sort of contextual testimony is admissible under Federal Rule of Evidence 404(b). *See United States v. Edouard,* 485 F.3d 1324, 1344 (11th Cir. 2007) ("But evidence of criminal activity other than the charged offense is *not* extrinsic under Rule 404(b), and thus falls outside the scope of the Rule, when it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." (citation and internal quotation marks omitted) (emphasis in original)). The pre-conspiracy testimony permissibly explains the context of the crime and was necessary to complete the story of the crime. Thus, the Court properly admitted the testimony.

Finally, **Belfast** objects to the Report in that it failed to recognize the constructive amendment of the Indictment caused by Sieh's testimony. (Objections 17). As previously discussed, "A constructive amendment . . . occurs when the jury instructions so modify the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment." *United States v. Starke,* 62 F.3d 1374, 1380 (11th Cir. 1995) (citations and internal quotation marks omitted). Sieh's testimony had no effect on the jury instructions and Belfast's argument is more properly viewed as asserting the testimony resulted in a variance. However, even this variance argument fails as Sieh's testimony included facts in addition to, but not materially different from, those specified in the Indictment. *See Lander,* 668 F.3d at 1295 (citations and internal quotation marks omitted) ("A 'variance' occurs when the evidence at trial establishes facts materially different from those alleged in the indictment.").

Accordingly, the Court agrees with Judge White's conclusion that Belfast's claims of ineffective assistance of counsel for failing to object to Sieh's testimony are refuted by the record and have no

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

merit.

In sum, the undersigned has reviewed the Report, the record, and applicable law to assure herself that the findings and recommendations are proper. In the light of that review, the undersigned agrees with the analysis and recommendations stated in Judge White's Report, and is not persuaded by Petitioner's objections to the contrary.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Report of Magistrate Judge **[ECF No. 13]** is **AFFIRMED AND ADOPTED** as follows:

    1. Roy M. **Belfast**, Jr.'s Motion **[ECF No. 1]** is **DENIED.**

    2. A certificate of appealability is **DENIED.**

    3. The Clerk of the Court is directed to **CLOSE** this case, and any pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of February, 2013.

/s/ Cecilia M. Altonaga

**CECILIA M. ALTONAGA**

**UNITED STATES DISTRICT JUDGE**

**Footnotes**

1

Citations to docket entries in case number 12-20754-CIV-ALTONAGA are referenced as "ECF No." Citations to docket entries in the underlying criminal case, number 06-20758-CR-ALTONAGA, are referenced as "Cr. ECF No."

2

Section 2340A provides, "Whoever outside the United States commits or attempts to commit torture shall be fined under this title or imprisoned not more than 20 years, or both . . . ." 18 U.S.C. § 2340A. "Torture" is defined as "an act committed by a person *acting under the color of law* specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control." 18 U.S.C. § 2340 (emphasis added). "Acting under the color of law" is not defined in the statute.

3

**Belfast** seems to conflate "material variance" and "constructive amendment" throughout his filings in this Section 2255 motion. In an abundance of caution, the Court will consider his claims under both standards.

4

**Belfast** requested the jury instructions repeat language in the Indictment alleging the object of the conspiracy was to "maintain, preserve, protect and strengthen the power and authority of Charles McArthur Taylor's presidency, and to intimidate, neutralize, punish, weaken and eliminate actual and perceived opponents of and threats to his administration by means of torture." (Objections 9).

1ykcases                                                   10

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

5

Federal Rule of Evidence 801(d) provides, in relevant part:

> (d) Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay:
>
> . . . .
>
> (2) An Opposing Party's Statement. The statement is offered against an opposing party and:
>
> . . . .
>
> (C) was made by a person whom the party authorized to make a statement on the subject;
>
> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>
> . . . .Fed. R. Evid. 801(d) (emphasis omitted).

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit "2"

Statute
18 J.S.C. § 2340 A

# CHAPTER 113C.  TORTURE

§ 2340.       Definitions
§ 2340A.     Torture
§ 2340B.     Exclusive remedies

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

**Amendments:**

**1994.** Act April 30, 1994, P. L. 103-236, Title V, Part A, § 506(a), 108 Stat. 463 (effective on the later of (1) the date of enactment of such Act or (2) the date on which the United States has become a party to the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, as provided by § 506(c) of such Act, which appears as 18 USCS § 2340 note) added the chapter heading and chapter analysis.

**1996.** Act April 24, 1996, P. L. 104-132, Title III, Subtitle A, § 303(c)(1), 110 Stat. 1253, redesignated this chapter, enacted as Chapter 113B, as Chapter 113C.

Act Oct. 11, 1996, P. L. 104-294, Title VI, § 601(j)(1), 110 Stat. 3501, purported to redesignate this chapter as Chapter 113C; however, because of a prior amendment, this amendment could not be executed. This amendment was repealed by Act Nov. 2, 2002, effective Oct. 11, 1996.

**2002.** Act Nov. 2, 2002, P. L. 107-273, Div B, Title IV, § 4002(c)(1), 116 Stat. 1808 (effective 10/11/1996, pursuant to § 4002(c)(1) of such Act), repealed § 601(j)(1) of Act Oct. 11, 1996, P. L. 104-294.

§ 2340.       Definitions

As used in this chapter [18 USCS §§ 2340 et seq.]--
   (1) "torture" means an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control;
   (2) "severe mental pain or suffering" means the prolonged mental harm caused by or resulting from--
      (A) the intentional infliction or threatened infliction of severe physical pain or suffering;
      (B) the administration or application, or threatened administration or application, of mind-altering substances or other procedures calculated to disrupt profoundly the senses or the personality;
      (C) the threat of imminent death; or
      (D) the threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind-altering substances or other procedures calculated to disrupt profoundly the senses or personality; and

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case 7:18-cv-00453-JLK-RSB   Document 1-1   Filed 09/14/18   Page 22 of 39   Pageid#: 56

(3) "United States" means the several States of the United States, the District of Columbia, and the commonwealths, territories, and possessions of the United States.

(Added April 30, 1994, P. L. 103-236, Title V, Part A, § 506(a), 108 Stat. 463; Oct 25, 1994, P. L. 103-415, § 1(k), 108 Stat. 4301; Oct. 31, 1994, P. L. 103-429, § 2(2), 108 Stat. 4377; Oct. 28, 2004, P. L. 108-375, Div A, Title X, Subtitle I, § 1089, 118 Stat. 2067 .)

## HISTORY; ANCILLARY LAWS AND DIRECTIVES

**Effective date of section:**

This section took effect on the later of (1) the date of enactment or (2) the date on which the United States became a party to the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, as provided by § 506(c) of Act April 30, 1994, P. L. 103-236, which appears as a note to this section. [The Convention entered into force with respect to the United States on Nov. 20, 1994, Treaty Doc. 100-20.]

**Amendments:**

**1994.** Act Oct. 25, 1994, in para. (1), substituted "within his" for "with".

Act Oct. 31, 1994, in para. (3), substituted "section 46501(2) of title 49" for "section 101(38) of the Federal Aviation Act of 1958 (49 U.S.C. App. 1301(38))".

**2004.** Act Oct. 28, 2004, substituted para. (3) for one which read: "(3) 'United States' includes all areas under the jurisdiction of the United States including any of the places described in sections 5 and 7 of this title and section 46501(2) of title 49.".

**Other provisions:**

**Effective date of 18 USCS §§ 2340 et seq.** Act April 30, 1994, P. L. 103-236, Title V, Part A, § 506(c), 108 Stat. 463, provides: "The amendments made by this section [adding 18 USCS §§ 2340 et seq.] shall take effect on the later of--

"(1) the date of enactment of this Act; or

"(2) the date on which the United States has become a party to the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment.".

[The Convention entered into force with respect to the United States on Nov. 20, 1994, Treaty Doc. 100-20.]

## RESEARCH REFERENCES

**Cross References**

This section is referred to in 10 USCS § 950v; 18 USCS §§ 114, 111, 2441

**Research Guide**

**Am Jur:**

3B Am Jur 2d, Aliens and Citizens § 1431

USCS        2

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

3C Am Jur 2d, Aliens and Citizens §§ 1399, 1547

**Immigration:**

3 Immigration Law and Procedure (rev. ed.), ch 33, Refugees, Asylum, Withholding of/Restriction on Removal, and Convention Against Torture Relief § 33.10

**Annotations:**

Adjudication of Application for "U Visa," by Alien Eligible Under 8 U.S.C.A. § 1101(a)(15)(U) [8 USCS § 1101(a)(15)(U)], Pursuant to 8 U.S.C.A. § 1184(p) [8 USCS § 1184(p)]. 78 ALR Fed 2d 515

**Law Review Articles:**

Venetis. Making Human Rights Treaty Law Actionable in the United States: the Case for Universal Implementing Legislation. 63 Ala L Rev 97, 2011

Bekerman. Torture-The Absolute Prohibition of a Relative Term: Does Everyone Know What is in Room 101? 53 Am J Comp L 743, fall 2005

Keller. Is Truth Serum Torture? 20 Am U Int'l L Rev 521, 2005

Crook. Contemporary Practice of the United States Relating to International Law: Edited by John R. Crook: International Human Rights and Humanitarian Law: Justice Department Issues New Memorandum on Torture. 99 AJIL 479, April 2005

Sussman. "Torture and the War on Terror": Defining Torture. 37 Case W Res J Int'l L 225, 2006

Pearlstein. Finding Effective Constraints on Executive Power: Interrogation, Detention, and Torture. 81 Ind LJ 1255, Fall 2005

Kreimer. Fighting Terrorism with Torture: Where to Draw the Line?: "Torture Lite," "Full Bodied" Torture, and the Insulation of Legal Conscience. 1 J Nat'l Security L & Pol'y 187, 2005

Scheppele. Fighting Terrorism with Torture: Where to Draw the Line?: Hypothetical Torture in the "War on Terrorism". 1 J Nat'l Security L & Pol'y 285, 2005

Levit. Fighting Terrorism with Torture: Where to Draw the Line?: The CIA and the Torture Controversy: Interrogation Authorities and Practices in the War on Terror. 1 J Nat'l Security L & Pol'y 341, 2005

Aceves; Hoffman. Using Immigration Law to Protect Human Rights: A Critique of Recent Legislative Proposals. 23 Mich J Int'l L 733, Summer 2002

Taylor. Law in the Age of Terrorism: Torture, Rendition & the United States: Dancing with the Scavenger's Daughter. 30 Montana Lawyer 10, June/July 2005

Amann. Current Debates in the Conflict of Laws: Application of the Constitution to Guantanamo Bay: Abu Ghraib. 153 U Pa L Rev 2085, June 2005

Ragavan; Mireles. The Status of Detainees from the Iraq and Afghanistan Conflicts. 2005 Utah L Rev 619, 2005

Cohan. Torture and the Necessity Doctrine. 41 Val UL Rev 1587, Summer 2007

## CASE ANNOTATIONS

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Definition of "torture" in 18 USCS § 2340(2) is limited to use of that word in Chapter 113C and, therefore, does not extend to jury instruction under 18 USCS § 3592(c)(6); thus, district court did not err in refusing to instruct jury that mental harm sufficient to establish torture must be prolonged. United States v Chanthadara (2000, CA10 Kan) 230 F.3d 1237, 2000 Colo J C A R 6005, cert den (2001) 534 US 992, 122 S Ct 457, 151 L Ed 2d 376 and (criticized in United States v Purkey (2005, CA8 Mo) 428 F.3d 738, 68 Fed Rules Evid Serv 907) and (criticized in United States v Quinones (2007, CA2 NY) 511 F.3d 289)

United States validly adopted United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027, pursuant to President's U.S. Const. art. II treaty-making authority, and it was well within Congress's power under Necessary and Proper Clause, U.S. Const. art. I, § 8, cl. 18, to criminalize both torture, as defined by Torture Act, 18 USCS §§ 2340-2340A, and conspiracy to commit torture. United States v Belfast (2010, CA11 Fla) 611 F.3d 783, 22 FLW Fed C 1179

18 USCS § 924(c) applied to defendant's extraterritorial conduct of committing acts of torture in Liberia; § 924(c) charge can arise out of extraterritorial conduct that is found to be in violation of Torture Act, 18 USCS §§ 2340-2340A, as Congress intended to apply § 924(c) extraterritorially when underlying substantive statute had extraterritorial application. United States v Belfast (2010, CA11 Fla) 611 F.3d 783, 22 FLW Fed C 1179

Fugitive's extradition was not time barred under Extradition Treaty, U.S-Bosn. &amp; Herz., art. VII, because fugitive was charged under laws of Bosnia and Herzegovina with war crimes against civilians, including torture and inhuman treatment, so United States Torture Act applied, and there was no statute of limitations under Act, and ex post facto principles did not bar retroactive application of Torture Act's statute of limitations. Nezirovic v Holt (2015, CA4 Va) 779 F.3d 233

§ 2340A.    Torture

(a) **Offense.**  Whoever outside the United States commits or attempts to commit torture shall be fined under this title or imprisoned not more than 20 years, or both, and if death results to any person from conduct prohibited by this subsection, shall be  punished by death or imprisoned for any term of years or for life.

(b) **Jurisdiction.**   There is jurisdiction over the activity prohibited in subsection (a) if--
    (1) the alleged offender is a national of the United States; or
    (2) the alleged offender is present in the United States, irrespective of the nationality of the victim or alleged offender.

(c) **Conspiracy.**   A person who conspires to commit an offense under this section shall be subject to the same penalties (other than the penalty of death) as the penalties prescribed for the offense, the commission of which was the object of the conspiracy.

(Added April 30, 1994, P. L. 103-236, Title V, Part A, § 506(a), 108 Stat. 463; Sept. 13, 1994, P. L. 103-322, Title VI, § 60020, 108 Stat. 1979; Oct. 26, 2001, P. L. 107-56, Title VIII, § 811(g), 115 Stat. 381 .)

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit "A"

Adminstrative Remedies

1. BP-8   BL-09-88
2. BP-9   938012 - F1
3. BP-10  938012 - R1
4. BP-11  Sent Via Certified  7017 3380 0002 7343 5375

# Informal Resolution Form

**Notice to Inmate:** Be advised, before seeking formal review of your concern, you must try to resolve the issue informally. Staff are obligated to make a good-faith effort to resolve ALL inmate concerns prior to issuing this form.

INMATES NAME: ROY BELFAST JR.    REG. NO.: 76556-004    UNIT: A

1) Specific Issue: Based upon 1st, 5th, 14th Amendment; 28 C.F.R 542.10 and Program Statement 1330.18, petitioner seek a formal review/investigation based upon facts provided and exhibits attached to BP-8, relating to the invalid judgment presently being executed (Continued on BP-8 Attachment).

2) Relief Requested: (See BP-8 Attachment for requested relief)

3) Date Received: 4-2-18

4) Responsible Department: Records    5) Date Issued: 4-2-18

6) Staff Response: Forwarded to DSCC on 4-3-18

Response received 4/5/18 - You are required to provide staff w/ sufficient info to support a challenge. Please provide specific names of persons to contact as well as agency. Once we receive this info we can forward to appropriate agency.

7. Informally Resolved?  Yes/No

| 8) Date Received by Counselor | 9) Date BP-229 issued | 3/27/18 P.B. 76556-004 |
|---|---|---|

Unit Manager's Signature                    Date

BL-09-88

BP-8 Continued .... On April 5th 2016 petitioner requested the DOJ-EOUSA-FREEDOM OF INFORMATION -PRIVACY ACT STAFF to provide petitioner the evidence used to prove petitioner violated 18 U.S.C. § 2340 A (c), count one of the present judgment being executed, issued on Jan 9th, 2009. April 20th 2016 petitioner is issued FOIA # FOIA-2016-02166 (See Ex. "A" J;C and April 20th 2016 letter). May 17th 2017 the department of Justice

Freedom of Information issues letter and provides 168 pages stating: "No other records were located" (See Ex. "B" May 17th letter with 168 pages with the numbers A0091980 placed on the lower right hand corner of FOIA-2016-02166 release). Petitioner appeals findings to the OIP and OIP responds to Appeal (See Ex "C" FOIA appeal sent via certified slip; letter designating appeal # DOJ-AP-2017-005286, and OIP appeal response dated 10/12/2017). Found in FOIA-2016-02166 release Doc 673 4/21/2016 20 of 25 designation number in lower right hand corner A0091980 20-000000, prosecutor declares trial record is "void" of jurisdictional requirement 18 U.S.C. 2340 A (b)(i)(2) a standard imposed by Congress (See Ex "D" 2340 A statute). Failure to prove violation of 18 U.S.C. § 2340 A (c) via FOIA request creates a violation of 18 U.S.C. § 4001(a), the department of justice record is devoid of any evidence to prove the J;C in it's present form is being legally executed. Petitioner provides Unit Team, CMC, A.W., Programs, Warden at USP Lee with official "notice" the judgment in it's present form is invalid and is being illegally executed unbeknownst to the staff presently at the institution. The FOIA findings proves a violation of not only 18 U.S.C. § 4001(a), but the 8th, 5th, 14th, 13th sec. 1 Amendments, Executive Order 13107, as well as the fraudulent use and or misappropriation of Congressional Budgetary dollars. Petitioner is not requesting for immediate release, but the following relief is being requested.

Relief Requested: Attorneys on behalf of the Warden at U.S.P investigate as required by law, issue a report to the Warden and findings be acted upon and provide any and all relief required based upon the laws, treaties, code of federal regulation, and U.S. Constitution.
(B.) Petitioner be given a copy of such report along side findings and informed of action taken.
(C.) Notification to relevant authorities in the event petitioners claim of fraud and misappropriation is substantiated (i.e. Angela Scott Team Lima leader at DSCC)
Warning: Failure to investigate would be fraudulent execution of petitioners J;C with the full knowledge of U.S.P. Lee staff based upon said facts stated above.

/S/        Roy Belfast

"erroneous judgment"

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: BELFAST, ROY                76556-004        A            U.S.P. Lee
_____     _____    _____    _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.      UNIT         INSTITUTION

**Part A– INMATE REQUEST**

Petitioner re-asserts 28 C.F.R 542.10 et seq / P.S. 1330.18 which is a request for a formal review/investigation based upon facts provided in initial filing and exhibits Attached to BP-8 relating to the erroneous execution of judgment based upon FOIA-2016-02166 findings. There seems to have been a administrative over-sight within the BP-8 (and mis-interpretation of claim), during the process, which mixed up BL-09-88 and BL-10-88 which has invalid PSR marked on the upper left corner. The relief requested for in BL-09-88 is clear and concise. A violation of 18 U.S.C. § 4001 (a) warrants the immediate attention of the Warden and or Attorney Generals office, as it implies/asserts arbitrary detention. (See BP-9 Attachment)

4/20/18                              /s/ Roy Belfast
_____                     _____
DATE                                SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____                     _____
DATE                                WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                CASE NUMBER: _____

                                          CASE NUMBER: _____

**Part C- RECEIPT**
Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Name: Roy Belfast Jr 76656-004
Date: 4/20/18
RE: Appeal from BP-8 BL-09-88

BP-9 Continued . . .

  Relief Requested : Petitioner re asserts the same relief requested
in BP-8 (BL-09-88). Petitioner looks forward to a thorough review according
to 5th and 14th "due process" standards. Petitioner further requests
notification of BP-9 remedy number from remedy coordinator, and
notification of any extensions needed to address the claim. Petitioner
does not seek immediate release, but seeks the following :

       /s/ Roy Belfast Jr

( Relief Continued. ) (A) Attorneys on behalf of the Warden at U.S.P.
 investigate as required by law. issue a report to the Warden and
 findings be acted upon and provide any and all relief
 required based upon the laws, treaties, code of federal regulations
 and U.S. Constitution

 (B) Petitioner be given a copy of such report findings of
 report and informed of action taken.

 (C) Notification to relevant authorities in the event petitioners
 claim of fraud and misappropriation is substantiated.

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY


DATE: MAY 2, 2018


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      LEE USP

TO  : ROY M BELFAST JR, 76556-004
      LEE USP    UNT: A    QTR: A02-204L


ADDITIONAL TIME IS NEEDED TO RESPOND TO THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.


REMEDY ID      : 938012-F1
DATE RECEIVED  : APRIL 24, 2018
RESPONSE DUE   : JUNE 3, 2018
SUBJECT 1      : OTHER SENTENCE COMPUTATION
SUBJECT 2      :

Institution Response to Administrative Remedy
United States Penitentiary, Lee
Jonesville, Virginia

Administrative Remedy Number: 938012-F1                    Date Receipted: 04-24-2018

This is in response to Administrative Remedy 938012-F1, in which you request a formal review/investigation of erroneous execution of your judgement. You request the Warden of USP Lee investigate this issue and provide you a copy of the report.

A review of your request reveals this issue has previously been addressed. In June 2016, the United States Probation Office (USPO) in the Southern District of Florida, reviewed and verified the accuracy of your Judgment and Commitment Order (J&C), and Presentence Investigative Report (PSR). Program Statement 5800.17 states an inmate may challenge the accuracy of information in their Central File and Unit Team will take reasonable steps to ensure the accuracy of the challenged information. This policy also recognizes that the Bureau of Prisons (BOP) may not change the PSR or the J&C and will not request the USPO do so. The BOP will request verification of information from the USPO when an inmate provides reasonable evidence the PSR or J&C is inaccurate and if not corrected, could impact the inmate's placement with in the BOP.

Based on the above information your request for relief is denied. If you are dissatisfied with this response, you may appeal to the Regional Director, Bureau of Prisons, Mid-Atlantic Regional Office, 302 Sentinel Drive, Suite 200, Annapolis Junction, MD 20701. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

_____          _5-10-18_____
M. Breckon, Warden                          Date

This response was delivered by my unit team on ___5-16____, 2018.

_Roy Belfast_____          _____
Inmate Signature                    Staff Signature



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Regional Director, Bureau of Prisons, Mid-Atlantic Regional Office, 302 Sentinel Drive, Suite 200, Annapolis Junction, M.D. 20701

9590 9402 3292 7196 0527 12

2. Article Number (Transfer from service label)
7017 1000 0000 3159 9135

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
☐ Addressee

B. Received by (Printed Name) C. Date of Delivery
05/29/18

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Rec

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: BELFAST ROY M, JR     76556-004     A     USP LEE
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A – REASON FOR APPEAL**
Petitioner seeks to appeal BP-9 response 938012-F1.
The finding by Warden Breckon is erroneous and fraudulent depriving petitioner of statutory and constitutional rights. The basis for denial was based upon a declaration that pre-dates the department of Justice "official statement and position" attached to BP-9 which is FOIA-2016-02166, May 17th 2017 letter and 168 page release. It is important to note both Warden and Region erroneously rejected BP-9 939033-F1 & BP10 939033-F1 which requested for a criminal referral and notification to DSCC on the ramification of the Fraud committed by United States Probation in federal investigation launched by BOP Law Enforcement (18 U.S.C. §3050) recently substantiated by FOIA-2016-02166 May 17th 2017 letter and

5/22/18        BP-10 continued on        Roy M Belfast
DATE           attachment               SIGNATURE OF REQUESTER

**Part B – RESPONSE**     7017 1000 0000 3159 9135

---

Received

MAY 29 2018

Mid-Atlantic Regional Office

_____                    _____
DATE                                   REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE          CASE NUMBER: 938012-R1

**Part C – RECEIPT**
                                        CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____                    _____
DATE                                   SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN                                                        BP-230(13)
                                                              JUNE 2002

BP-10 Continued.... One-hundred-sixty-eight page release mandated by law. BP-8 BL-09-88, BP-9 938012-F1 raises no claim about the PSR but rather the erroneous execution of judgment, the BP-9 938012-F1 response, is non-responsive to petitioners substantiated claim which was and is supported by Exhibits attached to both BP-8 BL-09-88, BP-938012 administrative remedies, which requires a mandatory review under regulation 28 C.F.R. 542.10 et seq. Again the FOIA-2016-02166 May 17th 2017 "Official policy position" and One hundred sixty-eight page release demonstrates a defect in the administration of sentence in relation to present judgment in relation to count 1, which proves the Warden is executing a invalid judgment in it's present form, this fact invalidates the PSR as well. As a result of the invalid nature of the JSC being executed is a violation of 18 U.S.C. § 4001(a); 18 U.S.C. 3624 (b); 18 U.S.C. § 3621 (i)(2)(3); 5th, 14th, 13th sec. 1, 8th Amendments Petitioners rights going forward are substantially violated going forward based upon the Warden Breckons clear defiance to recognize the FOIA-2016-02166 findings. Warden Breckon misrepresented the BOP's authority in his official capacity in relation to the new facts released in FOIA-2016-02166. The warden cannot blatantly dismiss a violation of 18 U.S.C. § 4001(a) when a violation has been substantiated.

Relief Sought: (1) Petitioner requests a thorough review and investigation on the violation of 18 U.S.C. § 4001(3), 18 U.S.C. § 3621 (i)(2)(3), 18 U.S.C. § 3624 (b), 5th, 14th, 8th, 13th sec. 1, based upon the mandated by regulation under 28 C.F.R. 542.10 et seq., which has been substantiated by FOIA-2016-02166 findings by the Department of Justice in Washington D.C.
    (2.) Misconduct investigation based upon investigation BP9-938012-F1.

/s/ Roy M. Belfast Jr.
76556-004

RECEIPT - ADMINISTRATIVE REMEDY


DATE: JUNE 5, 2018



FROM: ADMINISTRATIVE REMEDY COORDINATOR
      MID-ATLANTIC REGIONAL OFFICE

TO  : ROY M BELFAST JR, 76556-004
      LEE USP    UNT: A    QTR: A02-204L



THIS ACKNOWLEDGES THE RECEIPT OF THE REGIONAL APPEAL
IDENTIFIED BELOW:

REMEDY ID      : 938012-R1
DATE RECEIVED  : MAY 29, 2018
RESPONSE DUE   : JUNE 28, 2018
SUBJECT 1      : OTHER SENTENCE COMPUTATION
SUBJECT 2      :

# REGIONAL ADMINISTRATIVE REMEDY APPEAL
## Part B - Response

**Date Filed:** May 29, 2018                     **Remedy ID No.:** 938012-R1

You appeal the Warden's response to your administrative remedy. You claim your Presentence Investigation Report (PSI) and Judgment and Commitment Order (J&C) are incorrect.

We have reviewed your request and find the Warden's response to your Request for Administrative Remedy thoroughly addresses your concerns and is in accordance with Program Statement 5800.17, Inmate Central File, Privacy Folder, and Parole Mini-Files. As stated in your Request for Administrative Remedy, the Bureau of Prisons (BOP) is unable to make changes to your J&C and PSI. Your written challenge and a letter from the BOP was submitted to the United States Probation Office (USPO) and they verified the accuracy of your PSI and J&C.

Your appeal is denied. If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534. Your appeal must be received in the General Counsel's Office within 30 days from the date of this response.

JUN 25 2018
_____                    _____
Date                                        Angela P. Dunbar
                                            Regional Director
                                            Mid-Atlantic Region

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: BELFAST ROY M         76556-004         A         USP LEE
    LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

Part A—REASON FOR APPEAL   Petitioner seeks to appeal BP-10 Response 938012-R1 dated June 25th 2018 as it is not responsive to BP-8 or BP-9 appeal raised under 28 C.F.R. 542.10 et seq., P.S. 1330.18, failing to address the FOIA findings and 18 U.S.C. § 4001(a) violation as a result of the new findings which were attached as exhibits to substantiate claim (See Exhibit "A" attached to BP-11. Relief Requested: Petitioner request a full investigation, notification to the Attorney General on violation of 18 U.S.C § 4001(a) in relation to count 1 of the present judgment and immediate corrective measures taken according to Statutes, Regulations, Treaties and Constitution of the United States of America

7/4/18                                    Roy Belfast
    DATE                              SIGNATURE OF REQUESTER

Part B—RESPONSE

RECEIVED
JUL 09 2018
Administrative Remedy Section
Federal Bureau of Prisons

_____                    GENERAL COUNSEL
    DATE

ORIGINAL: RETURN TO INMATE          CASE NUMBER: 938012 A1

Part C—RECEIPT
                                    CASE NUMBER: _____

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION
SUBJECT: _____

_____                    _____
    DATE                              SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)
APRIL 1982

Administrative Remedy Number 938012-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal in which you challenge the information in your Judgement and
Commitment Order. For relief, you request corrective measures be
taken immediately.

We have reviewed documentation relevant to your appeal and, based
on the information gathered, concur with the manner in which the
Warden and Regional Director addressed your concerns at the time of
your Request for Administrative Remedy and subsequent appeal.
The information considered by the court for rendering its sentence
are not a matter for Bureau Of Prisons staff to address. Your
concerns in this regard are matters only the courts can address, and
you will need to follow up with correspondence to the appropriate
court. The BOP does not have the authority to grant you the relief
you seek.

Accordingly, this response is for informational purposes only.

_____7/20/18_____                    _____
Date                                   Ian Connors, Administrator
                                       National Inmate Appeals